UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA WATTERSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GARFIELD BEACH CVS LLC,<br><br>　　　　Defendant. | Case No.  14-cv-01721-HSG<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 41 |

　　　　Pending before the Court is Defendant Garfield Beach CVS, LLC's motion for summary judgment. Dkt. No. 41 ("Mot."). The motion concerns whether an employer must compensate an employee for time and expenses relating to annual health screenings and wellness reviews completed in compliance with the terms of a voluntary medical insurance plan sponsored by the employer. For the reasons described below, the Court GRANTS the motion.

**I.　BACKGROUND**

　　　　The following facts are undisputed unless stated otherwise. Plaintiff Roberta Watterson has been employed as a clerk by Defendant Garfield Beach CVS, LLC since June 2005. Dkt. No. 48-1 ("Watterson Decl.") ¶ 3. Beginning on June 1, 2009, and every year thereafter, Plaintiff has voluntarily enrolled in the CVS Caremark Welfare Benefit Plan ("Plan"), a group medical insurance program. Dkt. No. 20 ("Joint Not. Facts") ¶¶ 7-12, 14.

　　　　Beginning sometime in 2012 or 2013,[1] the Plan instituted a program called "WellRewards," under which participants who do not complete an annual health screening and

---

[1] The parties reference conflicting start dates for the WellRewards program. *Compare* Watterson Decl. ¶ 11 ("2013/2014"), *with* Mot. at 4 ("June 1, 2012"). Because the start date of the WellRewards program does not impact the Court's legal analysis, this apparent dispute of fact is not material.

1  online wellness review are required to pay an additional medical insurance premium of $50 per
2  month.  *See* Watterson Decl. ¶ 11.  In a document describing the WellRewards program, CVS
3  Caremark—which is not a party to this case—stated that "every colleague enrolled in the CVS
4  Caremark medical plan will be expected to" complete the health screening and online review
5  before a specific deadline.  Dkt. No. 48-10.  Participants in the Plan must complete the health
6  screening at a CVS MinuteClinic or Quest lab.  Dkt. No. 48-7 at 76:1-3.

   In the 2013-2014 Plan year, Plaintiff failed to complete the online wellness review and
8  paid a total of $184.64 in additional premiums as a result.  Dkt. No. 41-1 ("Watterson Dep. Tr.")
9  at 50:22-51:20.  In each subsequent year, Plaintiff has completed both the annual health screening
10 and online wellness review.  Watterson Decl. ¶¶ 15, 17-19.  Defendant did not compensate
11 Plaintiff for her time spent completing the health screenings or wellness reviews.  *See id.* ¶ 16.

12 Plaintiff filed this action on March 13, 2014 in Alameda County Superior Court.  Dkt. No.
13 1.  Defendant removed the action to this Court on April 14, 2014.  *Id.*  Based on the above-
14 described facts, Plaintiff alleges (1) Failure to Pay Hourly Wages in violation of the California
15 Labor Code; (2) Failure to Indemnify in violation of the California Labor Code; (3) Unlawful
16 Deductions in violation of the California Labor Code; (4) Failure to Provide Accurate Written
17 Wage Statements in violation of the California Labor Code; and (5) Unfair Competition in
18 violation of California Business and Professions Code § 17200.  Dkt. No. 1-3.  In her opposition,
19 Plaintiff states that she "stipulates to the dismissal of" her third cause of action (Unlawful
20 Deductions).[2]  Dkt. No. 48 ("Opp.") at 1 n.1.

**II.  DISCUSSION**

   **A.  Legal Standard**

   Summary judgment is proper where the pleadings and evidence demonstrate "there is no
   genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of

---

[2] Defendant states in its reply brief that it does not stipulate to the dismissal of this claim without prejudice.  Dkt. No. 50 ("Reply") at 4.  Plaintiff does not specify whether she stipulates to the dismissal of the claim with or without prejudice.  Because Plaintiff failed to substantively oppose Defendant's argument related to Plaintiff's third cause of action, the Court GRANTS Defendant's motion for summary judgment as that claim.  As a result, Defendant's preemption argument is moot.

United States District Court
Northern District of California

law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. To survive a motion for summary judgment, the non-moving party must then show that there are genuine factual issues that can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). To do so, the non-moving party must present specific facts creating a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.* Moreover, the court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

**B.  Plaintiff's Time Spent Completing The Annual Health Screening And Wellness Review Is Not Compensable**

"The Industrial Welfare Commission (IWC) is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 581 (2000) (internal quotation marks omitted). The IWC Wage Order at issue here requires employers to pay employees for all "hours worked." IWC Wage Order No. 7. "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to

1  work, whether or not required to do so." *Id.* § 2(G). Therefore, in order for Plaintiff to prevail on
2  her first cause of action for failure to pay wages, Plaintiff must have been "subject to the control"
3  of Defendant while she was completing the annual health screenings and online wellness reviews.
4  Making all factual inferences in Plaintiff's favor, the Court finds as a matter of law that she was
5  not.

### 1. Plaintiff Was Not Subject To Defendant's Control Because Her Participation In The Plan Was Voluntary

Plaintiff first argues that she was subject to Defendant's control because Defendant directed her to perform a task within a specified time period and threatened her with "lost wages" if she failed to so perform. Furthermore, Plaintiff argues that Defendant (1) does not permit employees to have the screening performed by their own physician or by a lab of their own choosing; (2) dictates which metrics must be tested; and (3) dictates the number, type, and content of questions on the wellness review questionnaire. Finally, Plaintiff contends that she is not free to use her own time for her own purposes while waiting to be screened.

While the above-listed facts might be relevant if Defendant had *required* Plaintiff to complete the annual health screenings and wellness reviews as a condition of her employment, they are not persuasive here where Defendant did not force Plaintiff to enroll in the Plan. There is no dispute that Plaintiff voluntarily enrolled in the Plan, which is offered as part of Defendant's optional benefits package for employees. Plaintiff concedes that "[Defendant] does not coerce Plaintiff to sign up for health insurance under threat of lost wages" and that she would not be "entitled to compensation for her time filling out paperwork to enroll in [Defendant]'s health plan" because she "is not subject to [Defendant]'s control when she fills out the paperwork to enroll in the health plan." Opp. at 18-19. The Court thus finds unpersuasive Plaintiff's argument that she was subject to Defendant's control *after* voluntarily signing up for the Plan.

California cases addressing an employer's provision of transportation services to its employees are persuasive in this context. In *Morillion v. Royal Packing Co.*, the California Supreme Court held that "an employer that *requires* its employees to travel to a work site on its buses must compensate the employees for their time spent traveling on those buses." 22 Cal. 4th

at 578 (emphasis added). However, the court specifically noted that "[t]ime employees spend traveling on transportation that an employer provides but does not require its employees to use may not be compensable as 'hours worked.'" *Id.* at 588. This distinction was further clarified in *Overton v. Walt Disney Co.*, in which the California Court of Appeal held that employers need not compensate employees for time spent riding a shuttle from a parking lot to the work site when those employees were not required to ride the shuttle. 136 Cal. App. 4th 263, 271 (2006) ("[T]he key factor is whether [Defendant] *required* its employees who were assigned parking in [a certain parking lot] to park there and take the shuttle. Quite obviously, [Defendant] did not.") (emphasis in original); *see also Alcantar v. Hobart Serv.*, No. 11-cv-1600-PSG, 2012 WL 6539547, at *4 (C.D. Cal. Dec. 13, 2012) (holding that defendant employer was not obligated to compensate plaintiff employee for time spent driving the defendant's service vehicle home where "driving the service vehicle home was an option provided by" the defendant and the plaintiff "was not required to subject himself to [the defendant's] control"). These cases support the conclusion that restrictions imposed on the use of optional benefits provided by an employer to employees do not subject those employees to the control of the employer such that the Wage Order's requirements are applicable. *See Novoa v. Charter Comm'ns, LLC*, No. 13-cv-1302-AWI, 2015 WL 1879631, at *7 (E.D. Cal. Apr. 22, 2015) ("Despite the restrictions that Defendant placed on Plaintiff's use of the company vehicle, its use to commute directly to the first job assignment was voluntary. Thus, the use of the vehicle to commute to and from home was not compensable.").

Furthermore, though Plaintiff contends that enrolling in the Plan was not "voluntary" because it was both a life and a legal necessity, the question for the Court is whether *Defendant* necessitated such enrollment. *See Overton*, 136 Cal. App. 4th at 272-73 (rejecting plaintiff's argument that "*Morillion* mandates travel time payments to employees who, as a practical matter, are required to use an employer-provided shuttle because no alternative transportation is available or feasible," because the California Supreme Court's analysis did not turn on that question). Plaintiff's need for health insurance results from circumstances and forces outside of Defendant's

1  control, and she does not need to enroll specifically in the Plan in order to satisfy that need.[3]

2  Finally, Plaintiff argues that her completion of the health screenings and wellness reviews "primarily benefited" Defendant by "help[ing] [Defendant] control its health care costs," and that this further suggests that such time should be compensable under California law. Opp. at 18. But the decisions cited by Plaintiff are limited to the analysis of whether "on-call or standby time" requires compensation; in this *particular* context California courts have considered whether the on-call or standby time "primarily benefited" the employer. *See Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833, 841 (2015) ("Courts have identified various factors bearing on an employer's control *during on-call time* . . . Courts have also taken into account whether the *on-call waiting time* . . . is spent primarily for the benefit of the employer and its business.") (internal quotation marks omitted and emphases added). Plaintiff cites no decision applying this "primary benefit" test outside of the context of on-call or standby time, which undisputedly is not at issue in this case.

### 2. *Frlekin* And *Sullivan* Address Materially Different Circumstances Than Those Presented Here

Plaintiff argues that the voluntary nature of her enrollment and participation in the Plan is not dispositive in light of two decisions by courts in this district, *Frlekin v. Apple, Inc.*, No. 13-cv-03451-WHA, 2014 WL 2451598 (N.D. Cal. May 30, 2014), and *Sullivan v. Kelly Servs., Inc.*, No. 08-cv-03893-CW, 2009 WL 3353300 (N.D. Cal. Oct. 16, 2009). But neither of these cases addressed the circumstances present here: an employer's provision of an optional benefit with strings attached. Rather, *Frlekin* and *Sullivan* addressed required employee activities that were inextricably intertwined with the performance of those employees' job duties.

In *Frlekin*, the court denied the defendant's motion for summary judgment that time spent

---

[3] Plaintiff also submits that the dramatic increase in health screening and wellness review completion rates after the WellRewards program was instituted constitutes evidence that compliance with the Plan's requirements is not "voluntary." Of course, this evidence is only pertinent to the question of whether the $50 premium surcharge encourages *those employees who have voluntarily enrolled in the Plan* to comply with the requirements of the Plan. It does not address the threshold question presented here, which is whether Defendant directed or required Plaintiff to enroll in the Plan, such that her decision to do so—and subsequent decision whether to complete the annual health screening and wellness review—was not voluntary.

1  by employees waiting to undergo a security check before they could enter or leave the workplace
2  was not compensable. 2014 WL 2451598, at *4. In arriving at that conclusion, the court
3  considered the *Alcantar* opinion cited above and distinguished that case by noting that "the
4  employees [in *Alcantar*] could decide not to volunteer to subject themselves to their employers'
5  requirements," whereas "the summary judgment record [in *Frlekin*] is at best ambiguous about
6  whether the security screenings were mandatory for at least some locations and circumstances."
7  *Id.* The *Frlekin* court also rejected the defendant's argument that it only required employees who
8  had bags to undergo a security screening and the choice of whether to bring a bag to work was a
9  voluntary choice; the court noted in passing that the "choice" to bring a bag to work may be driven
10 "by the necessities of life," such as if employees needed to bring "medication, feminine hygiene
11 products, or disability accommodations" to work. *Id.* The *Frlekin* defendant effectively required
12 the plaintiff employees to leave their bags—and life necessities—at home if they did not want to
13 undergo a security screening in order to enter the workplace. Here, there is no factual dispute that
14 enrollment in the Plan was purely voluntary and is in no way tied to Plaintiff's actual employment
15 or job duties. It is a purely optional benefit in which Plaintiff voluntarily participates. As such,
16 *Frlekin* is inapposite.

17       In *Sullivan*, the court denied defendant's motion for summary judgment that California law
18 does not require a temporary staffing agency to pay its employees for time and expenses relating
19 to interviews with the staffing agency's customers. 2009 WL 3353300, at *1. The defendant
20 argued that the employees were not subject to its control because attending the interviews was
21 voluntary, in that the employees would still be eligible for assignment with customers that did not
22 require placement interviews. The court rejected this argument, finding that "the interviews are
23 'voluntary' only to the extent that employees are willing to forego the types of jobs that require an
24 interview. That amounts to approximately fifty percent of the jobs Defendant offers. Refusing to
25 attend interviews would preclude Plaintiff from working these assignments." *Id.* at *4.

26       Here, a voluntary decision by Plaintiff not to enroll in the Plan would not deprive her of
27 any opportunities tied to her employment with Defendant. As noted above, the Plan is a purely
28 optional benefit provided by Defendant to its employees. It is undisputed that Defendant in no

7

way conditions any terms of employment on enrollment in the Plan, or on participants' completion of the annual health screening or wellness review. Indeed, this is what differentiates the facts here from those in Plaintiff's grave hypotheticals. *See, e.g.*, Opp. at 20 ("CVS could even direct workers who 'voluntarily' enroll in the health plan to work an extra 5 hours per week without compensation, and dock their pay if they refuse or fail to do so."). The conditions imposed as a result of Plaintiff's voluntary enrollment in the Plan are not at all related to her day-to-day work as a clerk. Moreover, the Plan is of the type explicitly envisioned by federal regulations governing group health insurance plans. *See, e.g.*, 26 C.F.R. § 54.9802-1(f)(5) (describing an example plan that "offers employees a health-contingent wellness program . . . focused on exercise, blood sugar, weight, cholesterol, and blood pressure" that provides "an annual premium rebate of $600" as a "reward for compliance").[4]

### 3. Plaintiff Was Not Suffered Or Permitted To Work While Completing The Health Screening And Wellness Review

Plaintiff argues in the alternative that she was "suffered or permitted to work" because Defendant knew or should have known that she was working while completing the health screening and wellness review. The Court disagrees. Plaintiff's arguments on this point essentially repeat the arguments rejected by the Court above—namely, that Plaintiff was "working" because Defendant directed her to complete the health screenings and wellness reviews, or because her completion of the health screenings and wellness reviews benefited Defendant by helping it reduce its health care costs. Taking all inferences in Plaintiff's favor, the record here establishes conclusively that Plaintiff's completion of the health screenings and wellness reviews was not "work" as defined by California law.

\*   \*   \*

The Court finds that the undisputed material facts demonstrate that Defendant did not require Plaintiff to enroll in the Plan and subject herself to the WellRewards program.[5] As a

---

[4] The Court does not need to reach the theoretical question of whether the requirements of a voluntary benefit program offered by an employer could ever be so onerous as to give rise to some sort of legal claim by employees.
[5] In its reply brief, Defendant asserts that there is a distinction between Defendant as a legal entity

8

result, Plaintiff was not "subject to the control of" Defendant when she completed the annual health exams and wellness reviews. Nor was Plaintiff "suffered or permitted to work" while engaging in those activities. Therefore, her time spent completing the health screening and wellness review is not compensable. The Court grants Defendant's motion for summary judgment as to Plaintiff's first cause of action.

### C. The Expenses Incurred By Plaintiff In Relation To The Plan Were Not Incurred In Direct Consequence Of The Discharge Of Her Duties Or At Defendant's Direction

California Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

Plaintiff has not shown that § 2802 applies here, where Plaintiff's expenses incurred in relation to completing the annual health screenings and wellness reviews were not tied to her job duties as a clerk or her employment more generally. Therefore, none of Plaintiff's activities in relation to the Plan were "in direct consequence of the discharge of" her job duties. Furthermore, as described in detail above, Defendant did not "direct" Plaintiff to complete the annual health screenings or wellness reviews because Plaintiff voluntarily enrolled in the Plan and thereby subjected herself to its terms. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's second cause of action.

### D. Plaintiff's Fourth And Fifth Causes Of Action Are Derivative Of Her First And Second Causes Of Action

Plaintiff cannot prevail on her fourth and fifth causes of action unless she prevails on her first or second cause of action. Because Plaintiff's first and second causes of action fail for the reasons explained above, the Court finds that Plaintiff's fourth and fifth causes of action must fail

---

and the Plan as a legal entity, and argues that any requirement of the Plan is not equivalent to the direction of the employer sponsor of the Plan. Reply at 7. In a sur-reply filed without leave of Court, Plaintiff contends that Defendant waived any argument based on the legal distinction between the Plan and Defendant. The Court did not consider or rely upon Defendant's untimely argument attempting to technically distinguish the Plan as a separate legal entity, and crediting that argument would require resolution of numerous disputed issues of material fact. Instead, the Court's ruling assumes that the conditions imposed on participants who voluntarily enroll in the Plan are attributable to Defendant.

as well.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The clerk is directed to enter judgment in favor of Defendant and close the file. Both parties shall bear their own costs of suit.

**IT IS SO ORDERED.**

Dated: August 12, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge